**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SHAWN WESLEY GOODMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-863-RLB** |
| **MIDLAND MORTGAGE** | **CONSENT** |

**ORDER**

Before the Court is Defendant MidFirst Bank's ("Defendant") Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (R. Doc. 23). The motion is opposed. (R. Doc. 28). Defendant filed a reply memorandum in further support of its motion. (R. Doc. 30). Plaintiff Shawn Wesley Goodman ("Plaintiff") filed a sur-reply. (R. Doc. 35).

## I. Background

On September 26, 2025, Plaintiff[1] commenced this action by filing a Complaint for Wrongful Foreclosure, Breach of Contract, Securities Violations, Violation of Louisiana Law, and Declaratory Relief, naming as the sole defendant "Midland Mortgage, a division of MidFirst Bank." (R. Doc. 1). The parties were notified on September 30, 2025 that this matter was assigned to a United States Magistrate Judge for all purposes, including trial, final entry of judgment, and direct review by the Fifth Circuit Court of Appeals. (R. Doc. 4).[2]

[1] Plaintiff is proceeding *pro* se. *Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet, they are not free "from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper-Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (citation omitted). Thus, courts need not "search for or . . . create causes of actions" for *pro se* plaintiffs. *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citation omitted).

[2] On June 30, 2026, the parties were notified that they had 14 days to decline consent to a Magistrate Judge. (R. Doc. 19). Since no party indicated they were withholding consent to proceed before a Magistrate Judge, the Court notified the parties on July 22, 2026 that this case will remain with the assigned Magistrate Judge for all matters, including entry of a final judgment pursuant to General Order 2024-02. (R. Doc. 22).

Plaintiff filed a First Amended Complaint into the record on February 3, 2026, seeking relief for wrongful foreclosure, breach of contract, violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), and violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1641(f). (R. Doc. 5 at 2-3). Plaintiff then filed a Motion for Leave to File Second Amended Complaint on April 21, 2026, which the Court granted. (R. Doc. 9). Plaintiff's Second Amended Complaint simply substituted MidFirst Bank as the proper Defendant; otherwise, Plaintiff's First Amended Complaint (R. Doc. 5) remains the operative pleading in this action.[3]

Plaintiff's First Amended Complaint contains the following relevant *allegations*:

- Plaintiff executed a mortgage loan secured by his primary residence located at 5013 Sunshine Park Court, Baton Rouge, Louisiana (the "Property").
- Defendant acted as the mortgage servicer and foreclosing party with respect to the Property.
- During the servicing of the loan, Plaintiff sent written correspondence disputing the account and requesting information relating to the loan's ownership, servicing history, and payment application. Defendant failed to provide adequate and timely responses as required by the federal servicing statutes.
- When foreclosure proceedings were initiated, Defendant did not possess or file authentic evidence demonstrating a complete and recorded chain of authority entitling it to enforce the note.
- Plaintiff objected to the foreclosure based on lack of proof of ownership or authority based on the belief Defendant did not have standing to foreclose. Despite the objections, Defendant proceeded with foreclosure and sale of the Property.
- Plaintiff suffered loss of property, damage to credit, emotional distress, and financial harm.
- The foreclosure was wrongful and invalid under Louisiana law since Defendant foreclosed without establishing its authority through authentic evidence as required by La. C.C.P. art. 2635.

---

[3] As the Amended Complaint does not adopt or incorporate the original Complaint, the Amended Complaint supersedes the original Complaint and only claims raised in the First Amended Complaint remain. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."); see also LR 10(a)(5) ("An amended complaint will supersede any prior filed complaint.").

- Defendant breached the mortgage agreement by pursuing foreclosure without lawful authority and without complying with mandatory foreclosure procedures as the mortgage agreement required Defendant to service the loan "in accordance with applicable law and the terms of the contract."
- Defendant failed to timely acknowledge and respond to Plaintiff's written notices disputing the loan and requesting information regarding servicing and ownership, violating RESPA.
- Defendant failed to accurately disclose "the identity of the owner of the obligation" upon request, violating TILA.

(R. Doc. 5). Plaintiff asserts the following claims: (1) wrongful foreclosure under Louisiana law, (2) breach of contract, (3) violation of RESPA, and (4) violation of TILA. (R. Doc. 5).

Defendant filed its Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on July 24, 2026, seeking to dismiss Plaintiff's First Amended Complaint. (R. Doc. 23). Plaintiff filed its Memorandum in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss on August 7, 2026. (R. Doc. 28). Defendant filed its Reply Memorandum in Further Support of MidFirst's Rule 12(b)(6) Motion to Dismiss on August 21, 2026. (R. Doc. 30). On August 27, 2026, the Court granted Plaintiff leave to file a sur-reply (R. Doc. 34), and Plaintiff's Limited Sur-Reply in Opposition to Defendant's Rule 12(b)(6) Motion to Dismiss was entered into the record. (R. Doc. 35).

## II. Law and Analysis

### A. Legal Standards

A Fed. R. Civ. P. 12(b)(6) motion tests the sufficiency of a complaint against Fed. R. Civ. P. 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive such a motion, a complaint must show there is a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). Factual assertions are presumed to be true; "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a Fed. R. Civ. P. 12(b)(6)

motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts do not presume the truth of conclusory statements but look for facts supporting the pleader's claim. *Twombly*, 550 U.S. at 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Moreover, Courts are compelled to dismiss claims grounded upon invalid legal theories even though they might otherwise be well-pleaded. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs are generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985).

**B. Arguments of the Parties**

In its Motion to Dismiss, Defendant argues Plaintiff fails to state any cognizable claim because he pleads almost no factual allegations, identifying no relevant dates, contract terms, correspondence, or conduct by either party that would support his claims. Instead, Defendant asserts Plaintiff relies on conclusory statements and bare allegations that cannot survive a motion to dismiss. (R. Doc. 23-1 at 3). More specifically, for Plaintiff's wrongful foreclosure claim under Louisiana law, Defendant argues Plaintiff's claim centers on Defendant's failure to file authentic evidence showing its authority to enforce the note. Defendant asserts this is not a valid legal theory as Louisiana law does not require authentic evidence of an assignment, just of the

promissory note. (R. Doc. 23-1 at 5-7). Defendant believes Plaintiff thus has failed to allege facts establishing any evidentiary deficiency in the foreclosure proceeding. (R. Doc. 23-1 at 7).

Further, Defendant argues that since defenses and procedural objections to an executory proceeding may be asserted through an injunction to halt the seizure and sale or through a suspensive appeal, or both, Plaintiff allowing the foreclosure to proceed uncontested resulted in the waiver of all procedural objections to the executory proceeding. After the recordation of a sheriff's sale or proces verbal in accordance with the executory process, objections as to lack of authentic evidence may not be used as grounds to annul the judicial sale. (R. Doc. 23-1 at 7). Defendant argues Louisiana law requires "substantive defects" in the executory proceeding to nullify a completed seizure and sale, and failure to produce authentic evidence does not constitute a substantive defect. (R. Doc. 23-1 at 8-9). Additionally, even if substantive defects were properly alleged, Defendant argues Plaintiff's tort claim for wrongful disclosure is prescribed. (R. Doc. 23-1 at 9-10).

For Plaintiff's breach of contract claim, Defendant argues Plaintiff does not identify a specific provision or contractual promise that Defendant breached, which is required under Louisiana law to plead a "breach" occurred. Defendant also argues Plaintiff did not plead sufficient facts to establish causation since conclusively stating he "suffered damages as a result of Defendant's breach" is insufficient. (R. Doc. 26-1 at 10-11).

Defendant further asserts that Plaintiff's RESPA claim should be dismissed because Plaintiff did not plead specific facts demonstrating (1) that he sent a Qualified Written Response to Defendant, (2) that Defendant failed to respond to any such request within the required time period by failing to include any dates or even a timeline of communications, or (3) that Plaintiff suffered actual damages as a result of Defendant's alleged failure to respond, instead making

another conclusory statement. (R. Doc. 23-1 at 12-15). Defendant further argues Plaintiff is not entitled to recover statutory damages under RESPA since Plaintiff has not shown "a pattern or practice of noncompliance" with RESPA. (R. Doc. 23-1 at 15).

Finally, Defendant asserts Plaintiff's TILA claim should be dismissed because Plaintiff does not allege (1) that he sent a written request to Defendant requesting the name, address, and telephone number of the owner or master servicer of the obligation, (2) that Defendant failed to provide the information to the best of Defendant's knowledge, (3) that Defendant is an owner or assignee of the underlying loan obligation, or (4) that the alleged TILA violation caused actual damages by failing to show detrimental reliance. (R. Doc. 23-1 at 16-18). Even if Plaintiff alleged Defendant was the assignee, Defendant argues Plaintiff did not allege that the TILA violation was "apparent on the face of the disclosure statement," which is required in a TILA claim against an assignee. (R. Doc. 23-1 at 17). Further, Defendant argues Plaintiff's TILA claim is time-barred as the claim is subject to a one-year prescriptive period, and the Act of Sale was in 2023. (R. Doc. 23-1 at 18).

Plaintiff opposed Defendant's Motion to Dismiss, primarily arguing that Defendant seeks dismissal "by disputing the factual accuracy" of Plaintiff's allegations rather than showing Plaintiff failed to meet a pleading standard. (R. Doc. 28 at 5). Plaintiff states, "The First Amended Complaint contains factual allegations identifying the parties, the underlying mortgage transaction, Plaintiff's repeated written disputes, requests for information concerning ownership and servicing, Defendant's alleged failures to comply with federal statutory duties, the subsequent foreclosure proceedings, and the resulting injuries alleged by Plaintiff." Plaintiff asserts these allegations "describe specific conduct by Defendant which, if proven, could entitle Plaintiff to relief under applicable federal and Louisiana law." (R. Doc. 28 at 7). Plaintiff argues

the Court is required to assume the truth of Plaintiff's well-pleaded allegations, not Defendant's "competing factual narrative." (R. Doc. 28 at 7).

Regarding Plaintiff's wrongful foreclosure claim, "the First Amended Complaint alleges a broader course of conduct in which Plaintiff repeatedly challenged Defendant's authority to enforce the mortgage obligation, requested information concerning ownership, servicing, accounting, and the legal basis for Defendant's claim authority, and alleges that Defendant failed to provide information required by federal law while nevertheless proceeding with foreclosure." (R. Doc. 28 at 10). Plaintiff asserts that whether Defendant ultimately possessed the authority to proceed with a foreclosure, whether Defendant complied with applicable federal statutes, and whether Defendant adequately investigated and responded to Plaintiff's written disputes are factual questions that cannot be resolved on the pleadings alone as Plaintiff is entitled to have his well-pleaded factual allegations accepted as true and construed in the light most favorable to him. (R. Doc. 28 at 10).

Again, with regard to Plaintiff's TILA claim and RESPA claim, Plaintiff argues Defendant's Motion improperly challenges the merits of Plaintiff's claims as Defendant's Motion contends Plaintiff's allegations are "either legally insufficient or unsupported by documentary evidence." (R. Doc. 28 at 13). For his TILA claim, Plaintiff asserts he alleged "that Plaintiff repeatedly submitted written correspondence requesting information concerning ownership of the mortgage obligation, the identity of the party legally entitled to enforce the debt, and Defendant's authority to collect payments and pursue foreclosure," and that "Defendant failed to provide the information required by federal law and instead responded in a manner that did not identify the owner or otherwise resolve Plaintiff's requests." (R. Doc. 28 at 13). Further, Plaintiff asserts his TILA claim is not time-barred as he alleges "continuing

statutory violations arising from Defendant's responses–or failure to respond–to Plaintiff's written requests concerning ownership and servicing." (R. Doc. 28 at 14).

For Plaintiff's RESPA claim, Plaintiff argues he alleged "that Plaintiff submitted multiple written communications disputing Defendant's servicing of the mortgage loan and requesting information concerning payment history, ownership of the obligation, servicing records, account balances, accounting information, fees assessed against the account, and Defendant's authority to service and enforce the loan." (R. Doc. 28 at 14). Plaintiff asserts he further alleged that Defendant "received those requests yet failed to conduct a reasonable investigation, failed to provide responses, failed to correct alleged servicing errors, and nevertheless continued collection and foreclosure related activity." (R. Doc. 28 at 14). Plaintiff argues Defendant's Motion asks the Court to resolve disputed factual issues requiring discovery, and that Plaintiff's allegations provide "fair notice of the claims asserted and permit the reasonable inference that Defendant may have failed to comply with statutory servicing obligations." (R. Doc. 28 at 15).

Plaintiff also argues he sufficiently alleged damages as he alleged Defendant's conduct "resulted in substantial financial and property-related injuries" and is not required to provide the amount of those damages at this time. (R. Doc. 28 at 15). Plaintiff argues the resolution of factual disputes is only proper after discovery, and he was not required to attach sufficient evidence at the pleading stage. (R. Doc. 28 at 16). Plaintiff then states he alleged "multiple independent causes of action," including "wrongful foreclosure; lack of authority to enforce; violations of the Truth in Lending Act; violations of the Real Estate Settlement Procedures Act; violations of Regulation X; statutory disclosure failures; servicing violations; ownership-related disputes; accounting-related disputes; and additional claims set forth in the First Amended

Complaint." (R. Doc. 28 at 18-19). Plaintiff urges the Court to allow him to amend his Complaint if it determines "that actual factual specificity is required." (R. Doc. 28 at 21).

In its Reply Memorandum, Defendant asserts that Plaintiff's Opposition "confirms, rather than cures, the pleading deficiencies identified" as it "fails to identify any specific factual allegations in support of his claims and relies instead on generalizations and legal conclusions." (R. Doc. 30 at 1-2). Defendant asserts Plaintiff's Opposition "repeatedly and incorrectly argues that he need not plead facts at all and that discovery will somehow supply what his pleading lacks." (R. Doc. 30 at 3). Further, Defendant states the Opposition "introduces factual allegations that do not appear in the First Amended Complaint," such as his claim that he "repeatedly challenged Defendant's authority" when the Complaint solely states he "sent written correspondence disputing the account and requesting information relating to the loan's ownership, servicing history, and payment application." (R. Doc. 30 at 4).

Defendant further argues that Plaintiff must first state a plausible claim for relief, and only then is discovery available to develop that claim. A Rule 12(b)(6) motion is decided on the face of the complaint. (R. Doc. 30 at 6). Finally, Defendant argues Plaintiff should not be granted leave to amend because "he has pled his best case," as evidenced by Plaintiff amending his original Complaint twice, and his "speculative assertion" that he can supplement the First Amended Complaint with additional factual allegations does not justify further amendment, especially considering his insistence that discovery is necessary before he can develop a factual basis for his claims. (R. Doc. 30 at 7)

Plaintiff's Sur-Reply solely addresses Defendant's contention that Plaintiff should not be allowed to amend as Plaintiff has pled his best case, adamantly arguing he can provide "additional particularized facts concerning communications and events already known to

Plaintiff and reflected in records presently available to him." (R. Doc. 35 at 2). Additionally, Plaintiff asserts that since the Second Amended Complaint was for the limited purpose of substituting MidFirst Bank as defendant, it did not provide a substantive opportunity to cure any deficiencies existing in the pleading. (R. Doc. 35 at 2-3). "Plaintiff does not contend that amendment can overcome a legal defect that the Court determines is incurable as a matter of law[,]" instead, "where the asserted deficiency concerns the **specificity of factual allegations**, dismissal with prejudice is unnecessary where those allegations can be supplied through a targeted amendment." (R. Doc. 35 at 4) (emphasis in original).

### C. Analysis

In Plaintiff's First Amended Complaint, he asserts the following causes of action: (1) wrongful foreclosure under Louisiana law, (2) breach of contract, (3) violation of RESPA, and (4) violation of TILA. (R. Doc. 5). Any further claims raised in either Plaintiff's Original Complaint or Plaintiff's Opposition will therefore not be considered by the Court.[4]

#### 1. Wrongful Foreclosure under Louisiana Law

##### i. The *Rooker-Feldman* Doctrine

Although not raised by the parties, the Court must first address the *Rooker-Feldman* doctrine as it is jurisdictional. *Weaver v. Tex. Capital Bank N.A.,* 660 F.3d 900, 904 (5th Cir. 2011). "Federal courts are courts of limited jurisdiction [and] possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). "Without subject-

---

[4] *See* footnote 2. Further, of the "multiple independent causes of action" Plaintiff states in the Opposition are raised in the First Amended Complaint that are not discussed herein: the "lack of authority to enforce" claim is encapsulated in Plaintiff's breach of contract claim; claims for "statutory disclosure failures; servicing violations; ownership-related disputes; [and] accounting-related disputes" are encapsulated in Plaintiff's RESPA and TILA claims; and there is no mention of a claim pursuant to Regulation X in the Complaint, so there are no allegations upon which this claim may be based.

matter jurisdiction, a federal court simply has no authority to decide the case." *Pidgeon v. Parker*, 46 F.Supp.3d 692, 697 (S.D. Tex. Aug. 28, 2014). Therefore, before ruling on a motion to dismiss, a federal court must ascertain whether it has subject matter jurisdiction, i.e., whether the motion—or the litigation at all—is properly before the court. "[F]ederal courts are duty-bound to examine the basis of subject matter jurisdiction sua sponte, even on appeal." *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

"[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts." *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (citing *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)). Specifically, the *Rooker-Feldman* doctrine precludes federal subject matter jurisdiction over challenges to state-court decisions in cases arising out of judicial proceedings. Where a plaintiff's "contentions implicate the validity of the state foreclosure judgment, and she seeks legal determinations that would allow her to retain possession of her home," the *Rooker-Feldman* doctrine is applicable. *Magor v. GMAC Mortg., L.L.C.*, 456 Fed. App'x 334, 335-36 (5th Cir. 2011). Put another way, "Rooker-Feldman bars 'cases brought by state court losers complaining of injuries caused by state-court judgment rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Stabler v. Ryan*, 949 F. Supp. 2d 663, 666 (E.D. La. June 7, 2013) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Plaintiff's First Amended Complaint requests the court "[d]eclare that the foreclosure was conducted without lawful authority." (R. Doc. 5 at 4). Plaintiff argues the foreclosure, seizure, and sale of his property were improper because Defendant foreclosed "without establishing its authority through authentic evidence as required by La. C.C.P. art. 2635." (R.

Doc. 5 at 3). To provide Plaintiff with his requested relief, the Court would be holding that the foreclosure was null and void, which is exactly the type of appeal of a state court judgment that the *Rooker-Feldman* doctrine prohibits. *See Bollingham v. Ocwen Loan Servicing, LLC*, No. CV 19-155-JWD-RLB, 2020 WL 963421, at *2 (M.D. La. Feb. 12, 2020), *report and recommendation adopted*, No. CV 19-155-JWD-RLB, 2020 WL 967340 (M.D. La. Feb. 27, 2020).

Plaintiff's "present claims arise from the state court proceedings and are 'inextricably intertwined' with the state court's judgment—i.e., reversal of the state court's foreclosure judgment would be a necessary part of the relief requested." *See Exxon*, 544 U.S. at 291, 125 S.Ct. 1517. The object of the claim is the state court foreclosure itself, so the district court lacks subject-matter jurisdiction to review the claims. *See id.*; *Bombet v. Donovan*, 2015 WL 1276555 (M.D. La. March 19, 2015) (dismissing case due to lack of jurisdiction pertaining to review of state court foreclosure under *Rooker-Feldman*); *see, e.g., Flores v. Citizens State Bank of Roma, Texas*, 132 F.3d 1457 (5th Cir. 1997) ("The sole purpose of this action is to review the state court's foreclosure and seizure of property pursuant to the related writ of execution and, therefore, cannot be reviewed in federal court."); *Morris v. Am. Home Mortg. Servicing, Inc.*, 443 Fed. App'x 22, 24 (5th Cir. 2011) (federal plaintiff's claim that a foreclosure judgment is unlawful is barred "because he is complaining of injuries caused by the state court judgments"); *Morris v. Wells Fargo Bank*, 677 F. App'x 955, 958 (5th Cir. 2017) (instructing district court to remand action to state court because the district court lacked subject matter jurisdiction given that the plaintiff was complaining of injuries caused by a state court judgment); *Kenner v. SunTrust Mortg., Inc.*, No. 12-17, 2012 WL 2880551, at *2 (E.D. La. July 13, 2012) ("It is clear from Plaintiffs' state court petition that the main objective of this action is

to invalidate the state foreclosure proceedings. This Court, however, does not have jurisdiction to review state court judgments.") (citing *Magor*, 456 Fed. App'x 334); *Carter v. Deutche Bank Nat. Tr. Co.*, No. 10-797, 2010 WL 3074323, at *2 (E.D. La. Aug. 2, 2010) ("Carter asks the Court to vacate the state court's judgment ordering the seizure and sale of her property. The Court, however, lacks jurisdiction ... to review state-court judgments"); *Weatherspoon v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-98, 2017 WL 2486363, at *4 (M.D. La. May 19, 2017), *report and recommendation adopted sub nom. Weatherspoon v. JPMorgan Chase Bank*, 2017 WL 2485226 (M.D. La. June 8, 2017) (the *Rooker-Feldman* doctrine applied where the plaintiff specifically sought to have the seizure and sale of property rescinded, annulled, or invalidated); *see also Alverson v. Wells Fargo Bank, N.A.*, No. 18-0123, 2018 WL 2234896, at *7 (D.N.M. May 16, 2018) ("*Rooker-Feldman* also applies here because the state court judgment is inextricably intertwined with the relief sought by Plaintiff. To be sure, issuing a permanent injunction that prevents Defendant from enforcing the foreclosure judgment, vacating the foreclosure judgment, or awarding restitution to Plaintiff to compensate for the state court judgment against him would each effectively overturn the foreclosure judgment."), *report and recommendation adopted*, 2018 WL 2441156 (D.N.M. May 31, 2018).

Accordingly, to the extent Plaintiff requests the Court to rescind the foreclosure, the Court does not have subject matter jurisdiction over the matter pursuant to the *Rooker-Feldman* doctrine. *Brooks v. Flagstar Bank, FSB*, No. 11-67, 2011 WL 2710026, at *8 (E.D. La. July 12, 2011) (dismissing claims against plaintiffs in original federal action based on the *Rooker-Feldman* doctrine under Rule 12(b)(1) to the extent the "plaintiffs' claims would require the Court to review the state court judgment ordering issuance of the writ of seizure and sale, or are

inextricably intertwined with that judgment," but separately dismissing the remaining claims under Rule 12(b)(6)).

**ii. Rule 12(b)(6)**

To the extent Plaintiff's claims could be construed to seek damages independent of setting aside or vacating the foreclosure, the Court has determined that Plaintiff's claims fail under Rule 12(b)(6) and therefore must be dismissed. "Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law." La. Code Civ. P. art. 2631. "Where a creditor seeks to enforce a mortgage on immovable property, it is only necessary to submit certain authentic evidence to prove the right to use executory process: (1) the instrument evidencing the obligation secured by the mortgage, and (2) the authentic act of mortgage or privilege on immovable property importing the confession of judgment." *Gulf Coast Bank and Trust Co. v. Warren*, 2012-1570 (La. App. 4 Cir. 9/18/13), 125 So.3d 1211, 1216-17 (citing La. Code Civ. P. art. 2635(A)); *see also Buckner v. Carmack*, 272 So.2d 326, 330 (La. 1973).

When the party bringing an executory process action is the assignee of the promissory note, "[t]he holder of any promissory note, whether negotiable or not, and any negotiable instrument under this Section may enforce the mortgage or privilege securing such instrument **without authentic evidence of** the signatures, **assignment**, pledge, negotiation, or transfer thereof." La. R.S. 9:4422 (emphasis added); *see also UMB Bank, Nat'l Ass'n v. Swafford,* 2023-0245 (La. App. 4 Cir. 11/7/23), 377 So. 3d 347, 352; *see also Bayview Loan Servicing, LLC v. Holden,* 2023-1347 (La. App. 1 Cir. 6/7/24), 391 So. 3d 751, 760, *reh'g denied* (July 16, 2024),

*writ denied*, 2024-01032 (La. 11/14/24), 396 So. 3d 62, *reconsideration not considered,* 2024-01032 (La. 2/19/25), 400 So. 3d 922.

Plaintiff states Louisiana law requires, for foreclosure by executory process, "authentic evidence of the promissory note and any assignments or authority to enforce the debt." (R. Doc. 5 at 2). However, this is an incorrect statement of law. As previously explained, Louisiana law solely requires authentic evidence of the note and the mortgage, not the assignment. *See Gulf Coast Bank and Trust Co.* 125 So.3d at 1216-17. Plaintiff alleges "Defendant did not possess or file authentic evidence demonstrating a complete and recorded chain of authority entitling it to enforce the note at the time foreclosure proceedings were initiated." (R. Doc. 5 at 2). Failing to show authentic evidence of "authority" is not required; Plaintiff did not allege that Defendant failed to file authentic evidence of the promissory note or mortgage, so Plaintiff has not alleged a viable claim under Louisiana law.

Further, the foreclosure sale occurred on June 28, 2023, and the Act of Sale was recorded in the East Baton Rouge conveyance records on June 30, 2023. (R. Doc. 23-1 at 9). La. R.S. 13:4112 provides, in pertinent part, "No action may be instituted to set aside or annul the judicial sale of immovable property by executory process by reason of any objection to form or procedure in the executory proceedings, **or by reason of the lack of authentic evidence to support the order and seizure**, where the sheriff executing the foreclosure has either filed the proces verbal of the sale or filed the sale for recordation in the conveyance records of the parish." (emphasis added); *see also Gulf Coast Bank and Trust Co.* 125 So.3d at 1217 (holding that once the judicial sale was completed, plaintiff needed to set forth enough factual allegations to establish a substantive defect in the executory process, and failure to produce authentic evidence was insufficient). Therefore, even if Plaintiff adequately alleged Defendant failed to file

authentic evidence, Plaintiff may not use the lack of authentic evidence as the basis to challenge the executory process foreclosure since the Act of Sale was previously recorded. Plaintiff alleges no other deficiencies in the executory process foreclosure.

Additionally, a claim for wrongful foreclosure is subject to a one-year prescriptive period. *See Morshaeuser v. Citimortgage, Inc.*, No. CV 12-2210, 2012 WL 12990576, at *4 (E.D. La. Nov. 14, 2012) (citing La. C.C. art. 3492.).[5] "Although there is no statutory cause of action in Louisiana for wrongful seizure, damages for a wrongful seizure of property have long been available under Louisiana's tort law." *Bombet v. Donovan*, No. 13-118, 2015 WL 65255, at *8 (M.D. La. Jan. 5, 2015). However, "[b]ecause liability is tied to the act of unlawfully seizing another's property, the cause of action arises at the moment of the seizure." *Id.* (ci*ting Mariche v. Wells Fargo Bank, N.A.,* No. 11–1191, 2012 WL 1057626, at *3 (E.D. La. Mar. 28, 2012)). The seizure must have occurred prior to June 28, 2023, the date of the foreclosure sale, and Plaintiff did not initiate the instant suit until September 26, 2025, more than two years after the foreclosure sale. Plaintiff's claim has therefore prescribed.

**2. Breach of Contract**

"Under Louisiana law, Plaintiff must prove three elements to succeed on a breach of contract claim: (1) that the obligor undertook an obligation to perform; (2) that the obligor failed to perform the obligation; and (3) that the failure to perform the obligation resulted in damages to Plaintiff." *Dickinson v. Pham*, No. CV 21-00434-BAJ-SDJ, 2023 WL 2525645, at *2 (M.D. La. Mar. 15, 2023) (citation omitted). In pleading these elements, "a plaintiff must allege a breach of a specific provision of the contract." *Barbe v. Ocwen Loan Servicing, LLC, et*

[5] The foreclosure sale occurred on June 28, 2023, prior to the implementation of the two-year prescriptive period for delictual actions through La. C.C. art. 3493.1. Since the two-year prescriptive period is applied prospectively beginning on July 1, 2024, the previous one-year prescriptive period contained in La. C.C. art. 3492 is applicable in the instant matter. *See* Act No. 423, H.B. No. 315, § 2-3.

*al.*, 383 F. Supp. 3d 634, 643 (E.D. La. 2019) (quotations and citation omitted); *see McCoy v. SC Tiger Manor, LLC*, No. CV 19-723-JWD-SDJ, 2022 WL 4492761, at *7 (M.D. La. Sept. 9, 2022), *report and recommendation adopted*, No. CV 19-723-JWD-SDJ, 2022 WL 4490158 (M.D. La. Sept. 27, 2022) (quotations and citation omitted) ("It is black-letter law in Louisiana that a party asserting a breach of contract must prove a breach of a specific contractual provision.").

Plaintiff fails to point to any contractual provision that Defendant has breached since Plaintiff solely alleges that "[t]he mortgage agreement required Defendant to service the loan in accordance with applicable law and the terms of the contract." (R. Doc. 5 at 3). Additionally, Plaintiff provides no factual allegations regarding causation, instead conclusively stating he "suffered damages as a result of Defendant's breach." (R. Doc. 5 at 3). Plaintiff's breach of contract claim has been inadequately pled and must be dismissed.

**3. Violation of RESPA**

Plaintiff alleges a violation of RESPA under 12 USC § 2605(e). (R. Doc. 5 at 3). "To state a viable claim under Section 2605(e), the [plaintiff] had to plead that their correspondence met the requirements of a [Qualified Written Response], that [defendant] failed to make a timely response, and that this failure caused them actual damages." *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 241 (5th Cir. 2014) (citing 12 U.S.C. § 2605(e), (f); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012) ("A plaintiff must allege actual damages resulting from a violation of § 2605.")). A Qualified Written Response ("QWR") is "a written correspondence … that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to

the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). When a "servicer of a federally related mortgage loan receives a qualified written request ... for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days ... unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A).

Plaintiff alleges he "sent written notices disputing the loan and requesting information regarding servicing and ownership," and that "Defendant failed to timely acknowledge and respond as required by 12 U.S.C. § 2605(e)." (R. Doc. 5 at 3). First, Plaintiff does not establish the loan is federally related. *See Jones v. Wells Fargo Home Mortg., Inc.*, No. CV 25-998, 2025 WL 2419721, at *5 (E.D. La. Aug. 21, 2025) ("Plaintiffs must identify the loan servicer, and must be able to allege that their mortgage was 'federally related.'"). Plaintiff also provides no information regarding the written correspondence sent, instead conclusively stating the correspondence was "disputing the account and requesting information relating to the loan's ownership, servicing history, and payment application." (R. Doc. 5 at 2). This information is insufficient to determine whether the correspondence meets the requirements of a QWR. *See Jones*, 2025 WL 2419721, at *5 ("Not every request for information constitutes a QWR for purposes of the RESPA.").

Further, Plaintiff conclusively states that Defendant failed to timely respond yet does not provide any dates or a timeline of the events. *See id.* ("Plaintiffs must allege the specifics (including the date sent) of the alleged QWRs that they claim to have sent to the loan servicer."); *see also Wilson v. Carrington Mortg. Servs. LLC,* No. CV 24-237, 2025 WL 106428, at *5 (W.D. La. Jan. 15, 2025) ("Simply stating that the Petition says the Defendant "failed to

respond" to QWRs without any facts to support how they achieved such a violation does not constitute "well-pleaded" factual allegations that can establish a plausible right to relief.").

Finally, Plaintiff has not alleged any facts to show his damages were the result of Defendant's alleged failure to provide notice, instead conclusively stating that "Defendant's failure caused Plaintiff actual damages, including fees, expenses, and emotional distress." (R. Doc. 5 at 3). Plaintiff has therefore failed to show any actual damages. *See L. v. Ocwen Loan Servicing, L.L.C.*, 587 F. App'x 790, 795 (5th Cir. 2014) ("Because [plaintiff] alleged no facts upon which his injuries could be viewed as resulting from [defendant's] failure to provide him with notice under RESPA, we conclude that the district court correctly dismissed his claim.") Plaintiff additionally failed to plead that there is a "pattern or practice of noncompliance," entitling him to statutory damages. *See* 12 USC § 2605(f)(1)(B).[6] Thus, Plaintiff has also not adequately alleged statutory damages.

**4. Violation of TILA**

TILA requires that "[u]pon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation or the master servicer of the obligation." 15 U.S.C. § 1641(f)(2). A servicer of consumer loans "shall not be treated as an assignee of such obligation ... unless the servicer is or was the owner of the obligation." 15 U.S.C. § 1641(f)(1). Assignees of the original lender are only liable "if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). A violation is "apparent" if it is

[6] Plaintiff's Opposition states the First Amended Complaint alleges "a broader course of conduct in which Plaintiff repeatedly challenged Defendant's authority to enforce the mortgage obligation, requested information concerning ownership, servicing, and accounting, and the legal basis for Defendant's claimed authority." (R. Doc. 28 at 10). However, the First Amended Complaint contains no mention of "repeated" actions and does not establish a "pattern of noncompliance" as required by 12 USC § 2605(f)(1)(B).

"(1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." *Id.*

Plaintiff alleges that "Defendant failed to accurately disclose the identify of the owner of the obligation upon request" and is therefore liable for statutory and actual damages under TILA. (R. Doc. 5 at 3). Plaintiff does not allege that Defendant was the owner of the loan; in fact, Plaintiff disputes whether Defendant even had authority to enforce the loan. Thus, Plaintiff has failed to show that Defendant, as a servicer of the loan, is liable under TILA. *See Garcia v. Universal Mortg. Corp.,* No. 3:12-CV-2460-L, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013) (stating that without allegations that the servicer was the owner, the claim fails as a matter of law); *Aguiluz v. Citibank, N.A.,* No. CV 18-5126, 2019 WL 5102235, at *4 (E.D. La. Oct. 11, 2019) (no allegations or evidence that [the servicer] ever owned the obligation entitles defendant to summary judgment).

Further, a claim alleging violations of TILA must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). TILA claims arise, at the latest, at the closing of the loan. *See Jackson v. Adcock*, CIV.A. 03-3369, 2004 WL 1900484, at *4 (E.D. La. Aug. 23, 2004). "Nondisclosure is not a continuing violation for purposes of the statute of limitations." *Id.* Plaintiff does not allege the timing of the closing of the loan. However, since the foreclosure sale occurred on June 28, 2023, the closing of the loan must have occurred prior to that date. Since the instant action was not filed until September 26, 2025, over two years after the foreclosure sale, Plaintiff's allegations based on violations of TILA are time-barred.

## V. Leave to Amend

Plaintiff, in his Opposition, asserts that discovery is required to resolve the parties' competing positions. (R. Doc. 28 at 17-18). However, in Plaintiff's Sur-Reply, Plaintiff states that "[i]f the Court concludes that the existing allegations require greater factual specificity, Plaintiff can plead additional particularized facts concerning communications and events already known to Plaintiff and reflected in records presently available to him." (R. Doc. 35 at 2).

Even if Plaintiff has additional information that could be pleaded, Plaintiff's wrongful foreclosure claim and TILA claim fail as a matter of law. The Court does not have subject matter jurisdiction to hear Plaintiff's wrongful foreclosure claim, and even if the Court had subject matter jurisdiction, the claim fails because (1) Plaintiff's sole deficiency with the foreclosure proceeding alleged is that Defendant did not provide authentic evidence of the assignment, which is not required under Louisiana law; (2) since the Act of Sale for the foreclosure proceeding has been filed, Plaintiff's claim cannot be based on the lack of authentic evidence as lack of authentic evidence is not a substantive defect in the foreclosure proceeding; and (3) Plaintiff's wrongful foreclosure claim is prescribed. Further, Plaintiff's TILA claim fails because (1) a servicer who is not alleged to be the owner of the loan is not liable under TILA and (2) Plaintiff's TILA claim is prescribed. These deficiencies are not curable, and allowing further amendment for these claims would be futile.

With further factual specificity, Plaintiff may be able to properly allege a RESPA claim or a breach of contract claim. Plaintiff is required to plead **facts** that support Plaintiff's claims and allows the Court to "draw the reasonable inference that defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The "particularity" of the facts is exactly what is required, and Plaintiff has plead almost no facts to support his claims.

Since there are no reasons Plaintiff's RESPA claim or breach of contract fail as a matter of law, the Court will grant Plaintiff leave to amend these claims.

## VI. Conclusion

Based on the foregoing,

**IT IS ORDERED** that MidFirst Bank's Motion to Dismiss (R. Doc. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's wrongful foreclosure claim and Truth in Lending Act claim are **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Plaintiff's Real Estate Settlement Procedures Act claim and breach of contract claim are **DISMISSED WITHOUT PREJUDICE** with leave to amend as set forth below.

**IT IS FURTHER ORDERED** that Plaintiff is granted leave to file a third amended complaint, solely addressing Plaintiff's Real Estate Settlement Procedures Act claim and breach of contract claim, within twenty-one (21) days of this Order. No new causes of action or parties may be added through the third amended complaint. If Plaintiff fails to amend the complaint as ordered, Plaintiff's Real Estate Settlement Procedures Act claim and breach of contract claim will be dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on October 14, 2026.



**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**